UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**TANYA S.,**

        **Plaintiff,**

v.                                           6:18-CV-00326 (NAM)

**ANDREW M. SAUL,**
**Commissioner of Social Security,**[1]

        **Defendant.**

---

**Appearances:**

John W. DeHaan
The DeHaan Law Firm P.C.
300 Rabro Drive East - Suite 101
Hauppage, New York 11788
*Counsel for Plaintiff*

Peter W. Jewett
Social Security Administration
Office of Regional General Counsel - Region II
26 Federal Plaza - Room 3904
New York, New York 10278
*Counsel for Defendant*

**Hon. Norman A. Mordue, Senior United States District Court Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Tanya S. filed this action under 42 U.S.C. §§ 1631(c)(3) and 1383(c)(3), challenging the denial of her application for Supplemental Security Income ("SSI") under the

---

[1] Plaintiff commenced this action against Nancy A. Berryhill, as Acting Commissioner of the Social Security Administration. (Dkt. No. 1). Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Because Nancy A. Berryhill was only sued in her official capacity, Andrew M. Saul is automatically substituted as the named defendant in this action. Fed. R. Civ. P. 25(d). The Clerk of Court is respectfully directed to amend the caption.

Social Security Act ("the Act"). (Dkt. No. 1). The parties' briefs are presently before the Court. (Dkt. Nos. 9, 10). After carefully reviewing the administrative record, (Dkt. No. 6), and considering the parties' arguments, the Court reverses the denial decision, and remands for calculation of benefits.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for disability benefits in June 2014, alleging that she had been disabled since October 25, 2010. (R. 233–34). Plaintiff asserted that she is disabled due to back pain, neck pain, acid reflux, and high cholesterol. (R. 255). The Social Security Administration ("SSA") denied Plaintiff's application on November 7, 2014. (*See* R. 117–24). Plaintiff appealed that determination and requested a hearing before an Administrative Law Judge ("ALJ"). (*See* R. 125–26). The hearing was held on October 11, 2016 before ALJ Barry E. Ryan. (R. 73–93). The ALJ held a supplemental hearing on January 11, 2017. (R. 32–49). Plaintiff was represented by counsel at both hearings. On January 23, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 18–26). Plaintiff's subsequent request for review by the Appeals Council was denied on January 16, 2018. (R. 1–5). Plaintiff then commenced this action on April 17, 2018. (Dkt. No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff was born in 1975. (R. 25). She attended school through the eighth grade and later obtained a GED. (R. 77). Afterwards, Plaintiff completed Certified Nursing Assistant ("CNA") training and worked in nursing homes. (R. 77–78). Plaintiff has not worked in a nursing home or performed any nursing-related work since 2005, and her CNA certification has lapsed due to inactivity. (R. 78). Plaintiff testified that she stopped working as a CNA because she injured her back several times over the course of five years in nursing. (R. 80).

2

These injuries required her to undergo back surgery in 2006. (*Id*.). Plaintiff testified that even after the surgery, her back continued to be a problem. (R. 81). Plaintiff stated that she continues to attend physical therapy for her back and has sharp, constant, burning pain running from her lower back down her outer left leg to her ankle. (R. 81–82). She testified that she has migraines from pain in her spine which runs up to her shoulder blades and the back of her head. (R. 82). Her shoulders feel heavy and weighed down. (*Id*.). Plaintiff testified that she had surgery performed on her left shoulder in 2014, but that procedure was unsuccessful in remedying her pain. (R. 83).

Plaintiff testified that she is unable to stay in any one position for a prolonged period. (R. 84). She stated that she normally lays on her side because she cannot sit or stand for extended durations. (*Id*.). Her days are primarily spent lying in bed on either heat or ice. (*Id*.). According to Plaintiff, she cannot perform most daily tasks and chores, is unable to drive more than two to three miles, and cannot cook for herself beyond "putt[ing] a can of soup in a bowl and throw[ing] it in a microwave." (R. 85). She cannot go outside for extended periods of time or socialize beyond going to doctor's appointments. (R. 86–87). Plaintiff claimed that the heaviest thing she could carry is a gallon of milk and that anything heavier than that would cause "really bad pain" running between her head and her feet. (R. 89–90).

Plaintiff testified that her only other work experience, following her back surgery, was working for an answering service. (R. 80). In that role, she took messages for doctor's offices, lawyers, and funeral homes while also providing monitoring services for fire and burglary alarms. (R. 78–79). Plaintiff testified that the demands of that job, namely "too much bending, twisting, and turning," resulted in an unmanageable amount of pain. (R. 80–81).

As a result of her pain, Plaintiff is taking Morphine, Tizanidine, Topiramate, and Oxycodone. (R. 87). Plaintiff states that each of these medications, which are prescribed by her pain management doctor, make her drowsy. (*Id*.). Plaintiff says that she takes her pain medication and gets "knocked out." (R. 90). Plaintiff was prescribed a cane to stabilize her walking. (R. 87). Plaintiff was also prescribed a transcutaneous electrical nerve stimulation ("TENS") unit to help lessen her pain. (*Id.*). In addition, Plaintiff takes Cymbalta for anxiety and depression. (R. 89).

### C. Medical Evidence of Disability

Plaintiff's disability claim stems from conditions including back pain, neck pain, acid reflux, and high cholesterol. (R. 255). Plaintiff claims that she has struggled with these conditions since 2006 and has received treatment from several medical providers. (R. 300).

#### 1. Dr. Julie Perlanski, Primary Care Physician

Starting in 2002, Plaintiff went to Dr. Perlanski complaining of back and hip pain. (R. 475). Plaintiff reported that she aggravated her back at work. (R. 468). Plaintiff was also seen in an emergency room in 2003 for severe back and left hip pain. (R. 474). In April 2003, Dr. Perlanski noted that Plaintiff was experiencing back pain which would shoot down to her buttocks and leg. (R. 468).

In March 2005, Plaintiff stated that she heard a "snap" in her back and suffered "pain so severe [she] immediately went to the ER in tears." (R. 457). Throughout 2005, Plaintiff complained about physical pain, mainly on her left side, and claimed to have both "good and bad days." (R. 455). During this time, Dr. Perlanski noted that Plaintiff was attending physical therapy for her pain and that she had scheduled an appointment with a neurosurgeon. (R. 452).

4

Plaintiff told Dr. Perlanski that she was unable to do activities around the house because of her pain. (R. 451).

In 2006, Plaintiff continued experiencing back and hip pain and received her first epidural injection. (R. 448). Dr. Perlanski encouraged Plaintiff to begin pain management treatment and to consider surgical intervention. (R. 447). Following Plaintiff's back surgery in 2006, Dr. Perlanski noted that Plaintiff's pain persisted, and that Plaintiff remained on several pain medications. (R. 443–44). Over the next several years, Plaintiff continued to complain of ongoing back pain. (*See generally* R. 325–441).

### 2. Dr. Nathaniel Gould, Pain Management Specialist

Plaintiff saw Dr. Gould for pain management treatment from 2011 through 2016. (R. 323–24, 478–583, 611–47, 713–17). Over that time, Dr. Gould prescribed Plaintiff's pain medications and epidural steroid injections. (*See id.*).

In a Medical Source Statement from June 2015, Dr. Gould assessed that Plaintiff could occasionally lift ten pounds at a time, and could regularly lift five pounds at a time. (R. 323). During an eight-hour workday, Dr. Gould estimated that Plaintiff could stand or walk for no more than two hours. (*Id.*). Dr. Gould determined that Plaintiff would not be able to sit in an upright position for more than two hours in an eight-hour workday. (*Id.*). Dr. Gould also noted that Plaintiff was unable to climb, balance, kneel, crouch, crawl, stoop, or reach in any given direction at any time. (R. 323–24). He found that Plaintiff could occasionally perform manipulative tasks such as handling, feeling, or fingering. (R. 324). Dr. Gould concluded that Plaintiff's pain is so severe that it incapacitates her to the point of being "off-task for at least 50% of the time in an 8-hour workday." (*Id.*).

### 3. Dr. Tanya Perkins-Mwantuali, Consultative Examiner

Dr. Perkins-Mwantuali performed a consultative examination on Plaintiff on October 8, 2014. (R. 300–304). Dr. Perkins-Mwantuali concluded that Plaintiff had "moderate limitation walking, standing, kneeling, crawling, squatting, climbing, bending, twisting, lifting, pushing, pulling, and reaching and moderate to marked limitation with range of motion of cervical spine." (R. 303). Dr. Perkins-Mwantuali noted that Plaintiff was wearing a TENS unit, and used a cane, and "appeared to be in acute distress." (R. 301).

### 4. Dr. Gerald Orth, Medical Expert

Dr. Gerald Orth is an Agency-appointed medical expert who prepared a Medical Source Statement based on a review of Plaintiff's medical records. (R. 684, 697–712). Dr. Orth estimated that Plaintiff was able to continuously lift over ten pounds for two-thirds of the workday and up to twenty pounds for up to one-third of the workday. (R. 697). Dr. Orth assessed that Plaintiff could sit for one hour at a time for five hours total in a normal eight-hour workday, and that she could stand or walk without interruption for thirty minutes at a time for a total of three hours in a workday. (R. 698). Dr. Orth noted Plaintiff's use of a cane, but found that it was not medically necessary. (*Id.*).

Dr. Orth assessed that Plaintiff could continuously reach, handle, finger, feel, push, or pull with her right side continuously for over two-thirds of a workday. (R. 699). With Plaintiff's left side, Dr. Orth acknowledged limitations with reaching, but found that Plaintiff could continuously reach, handle, finger, feel, push, or pull for over two-thirds of a workday. (*Id.*). Dr. Orth concluded that Plaintiff could only make occasional use of her feet for no more than one-third of the workday. (*Id.*). Dr. Orth stated that Plaintiff could never climb ladders or scaffolds, balance, or crawl, but she could climb stairs and ramps, stoop, kneel, or crouch for

6

one-third of the day. (R. 700). Dr. Orth then found that Plaintiff could perform various work-related activities. (R. 702). Dr. Orth stated that none of the Plaintiff's impairments "met or equaled" any of the impairments listed in the Listing of Impairments. (R. 703–704).

**D. ALJ's Decision Denying Benefits**

On January 23, 2017, ALJ Ryan issued a decision denying Plaintiff's application for disability benefits. (R. 15–30). At step one of the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since June 13, 2014, the date when she applied for disability. (R. 20).

At step two, the ALJ determined that, under 20 C.F.R. § 416.920(c), Plaintiff had three "severe" impairments: cervical spine degenerative disc disease; left-shoulder degenerative changes; and lumbar spine disc bulging and herniated nucleus pulposus. (*Id.*). The ALJ also noted "non-severe" impairments associated with carpal tunnel syndrome. (R. 21).

At step three, the ALJ found that Plaintiff's impairment or combination of impairments did not medically equal the level of severity to meet the criteria for one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (*Id.*). The ALJ concluded that Plaintiff's medical record failed to demonstrate "the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04." (*Id.*). Further, the ALJ found nothing in the medical record to support a finding that Plaintiff's back injuries have "resulted in an inability to ambulate effectively, as defined in [listing] 1.00(B)(2)(b)." (*Id.*).

At step four, the ALJ found that Plaintiff possessed "the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a)." (*Id.*). The ALJ determined that Plaintiff "can lift and carry up to 10 pounds occasionally and less

than 10 pounds frequently; sit for six hours in an eight-hour workday; and stand/walk for two hours in an eight-hour workday." (R. 21). Additionally, the ALJ noted that Plaintiff "can occasionally kneel, crouch, crawl, and climb stairs and ladders." (*Id.*). The ALJ found that while Plaintiff's impairments could cause her alleged symptoms, her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence . . . ." (R. 22).

Specifically, the ALJ reviewed Plaintiff's MRIs and EMGs and found that they did not support the extent of her symptoms. (R. 22). The ALJ noted that testing showed "no definite cord or signal abnormality, with "mild stenosis," and only "slight flattening of the cord at C5-6." (*Id.*). The ALJ also noted that, while Plaintiff was in "acute distress" at the consultative examination in October 2014, all of her impairments were indicative of only "slight" limitations. (R. 23). Further, the ALJ noted that Plaintiff's treating source said in January 2015 that she "had full and stable range of motion of the neck and back with no radicular symptoms." (*Id.*). At that time, Plaintiff also "ambulated with a normal gait and had normal muscle strength and tone." (*Id.*). The ALJ pointed to the evidence that Plaintiff lost 20 pounds as of May 2015 "because she had been more active of late," noting that this was "inconsistent with her [ ] testimony that she spends most of her days lying in bed." (*Id.*). The ALJ also pointed out that Plaintiff's reported drowsiness due to pain medication was inconsistent with a statement made to her treating doctor in November 2015. (*Id.*). Additionally, the ALJ found that the daily activities Plaintiff reported to the consultative examiner were much less limited that what she claimed at the hearing. (*Id.*). The ALJ found that those activities "require many of the same functions that the claimant allege[s] she is unable to perform in a work setting." (*Id.*).

8

Regarding the opinion evidence, the ALJ gave significant weight to the opinion of medical expert Dr. Orth. (R. 24). Specifically, the ALJ relied on Dr. Orth's assessment that Plaintiff "can lift and carry up to [twenty] pounds occasionally and [ten] pounds continuously, sit for one hour at a time and for five hours in an eight-hour workday, and stand/walk for [thirty] minutes each at one time and for three hours each in an eight-hour workday." (*Id.*). The ALJ found that Dr. Orth's determination followed a thorough review of the medical evidence and was "generally consistent" with the evidence as a whole. (*Id.*).

The ALJ also gave significant weight to the findings of consultative examiner Dr. Perkins-Mwantuali, including that Plaintiff had "moderate limitations for walking, standing, kneeling, crawling, squatting, climbing, bending, twisting, lifting, pushing, pulling, and reaching" and "moderate-to-marked limitations for range of motion of cervical spine." (*Id.*). The ALJ concluded that this determination was the result of a sufficiently thorough examination by a physician of "extensive [ ] expertise" and was in line with the objective evidence of the medical record. (*Id.*).

The ALJ gave "little weight" to the opinion of Plaintiff's pain management specialist, Dr. Gould, who found that Plaintiff could carry up to ten pounds occasionally and up to five pounds regularly, stand, sit, or walk for less than two hours of the workday, and "would be off-task for at least 50% of the workday because of her pain." (R. 24). The ALJ found that these "extreme limitations" were inconsistent with objective evidence in Plaintiff's medical record and the findings of the medical expert and the consultative examiner. (*Id.*).

Finally, at step five, the ALJ concluded that Plaintiff could not perform her past relevant work as a Certified Nursing Assistant, but "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national

9

economy that [Plaintiff] can perform." (R. 24–25). The ALJ found that, while Plaintiff had some additional limitations that prevented her from performing the full range of sedentary work, these limitations "have little or no effect on the occupational base of unskilled sedentary work." (R. 25). Therefore, the ALJ found that Plaintiff was not disabled. (*Id.*).

## III. DISCUSSION

### A. Disability Standard

To be considered disabled, a claimant must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The SSA uses a five-step process to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [*per se*] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

10

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 20 C.F.R. § 404.1520. The Regulations define residual functional capacity ("RFC") as "the most [a claimant] can still do despite your limitations." 20 C.F.R. § 404.1545. In assessing the RFC of a claimant with multiple impairments, the SSA considers all "medically determinable impairments," including impairments that are not severe. *Id.* § 404.1545(a)(2). The claimant bears the burden of establishing disability at the first four steps; the Commissioner bears the burden at the last. *Selian*, 708 F.3d at 418.

### B. Standard of Review

In reviewing a final decision by the Commissioner, the Court does not determine *de novo* whether Plaintiff is disabled. Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

When evaluating the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is based upon a legal error. 42 U.S.C. § 405(g); *Selian*, 708 F.3d at 417; *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (quoting *Moran*, 569 F.3d at 112). The substantial evidence standard is "very deferential," and the Court may only reject the facts found by the ALJ "if a

reasonable factfinder would *have to conclude otherwise*." *Id*. at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). Consequently, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).

**C. Analysis**

Plaintiff argues that the ALJ improperly weighed the medical evidence and failed to give good reasons for discounting an opinion from Plaintiff's treating provider, Dr. Gould. (Dkt. No. 9, pp. 23–30). Plaintiff asserts that the ALJ "forsook his duty to weigh the medical evidence in accordance with the factors set forth in 20 C.F.R. § 416.927(c)(2), and instead, summarily discounted and/or dismissed the assessment of long-time treating, board-certified physician." (*Id*., p. 24). As a result, Plaintiff claims that "the ALJ's evaluations of the medical evidence were either completely unjustifiable or completely meaningless." (*Id*.). In response, the Commissioner argues that "[r]eading the RFC determination as a whole, the ALJ clearly set forth adequate rationale to support his findings, [which] were supported by substantial evidence, and [ ] gave good reasons for not adopting Dr. Gould's assessment." (Dkt. No. 10, p. 6). The Commissioner contends that the ALJ properly discounted Dr. Gould's restrictive assessment because "such limitations were not supported by the record, including objective medical evidence." (*Id*., pp. 9–10). The Commissioner also asserts that the ALJ's decision properly relied on the findings of Drs. Orth and Perkins-Mwantuali, as well as objective medical evidence to support the RFC determination. (*Id*., pp. 6–9).

12

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," even if that finding does not perfectly correspond with any of the opinions of cited medical sources. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). However, an ALJ is not a medical professional, and he "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018). In other words, there must be substantial evidence to support a finding of functional limitation(s) or lack thereof. Relatedly, under the treating physician rule, an ALJ owes "deference to the medical opinion of a claimant's treating physician[s]." *Church v. Colvin*, 195 F. Supp. 3d 450, 453 (N.D.N.Y. 2016) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). But if a treating physician's opinion is not consistent with other substantial evidence in the record, such as the opinions of other medical experts, the ALJ need not give the treating source opinion controlling weight. *Id*.

When a treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *See* 20 C.F.R. § 416.927(d)(2). Recently, in *Estrella v. Berryhill*, the Second Circuit reiterated its mandate that ALJs must follow specific procedures in determining the appropriate weight to assign a treating physician's opinion. *See generally* 925 F.3d 90 (2d Cir. 2019). The Circuit described the proper steps as follows:

> First, the ALJ must decide whether the opinion is entitled to controlling weight. "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" [*Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)] (third brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)). Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In

13

> doing so, [the ALJ] must "explicitly consider" the following, nonexclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).

*Id*. at 95–96. The Circuit also noted that "[a]n ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Id*. at 96 (citing *Selian*, 708 F.3d at 419–20). "If 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment],' we are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth [its] reasons.'" *Id*. (citing *Halloran*, 362 F.3d at 32–33).

In this case, the ALJ determined that Plaintiff retained the RFC to perform "less than the full range of sedentary work," such that she could do minor lifting, sit for six hours in an eight-hour day, stand/walk for two hours in that day, and occasionally kneel, crouch, crawl, and climb stairs and ladders. (R. 21). "Sedentary work" is defined in the Regulations as a job which primarily involves sitting, "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). The job "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10, 1983 WL 31251, at *5). Moreover, "the concept of sedentary work contemplates substantial sitting . . . [and] alternating between sitting and standing may not be within the concept of sedentary work." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citations omitted).

14

Here, the Court finds that Plaintiff's RFC is not supported by substantial evidence. The ALJ relied heavily on Dr. Orth's findings to support his conclusion that Plaintiff could "sit for six hours in an eight-hour workday and stand/walk for two hours in an eight-hour workday." (*See* R. 21, 24). Based solely on a review of medical records, Dr. Orth opined that Plaintiff could sit for one hour at a time without interruption for a total of five hours in an eight-hour day, stand for thirty minutes at a time, and walk for thirty minutes at a time. (R. 698). The ALJ gave Dr. Orth's assessments "significant weight," despite the fact that Dr. Orth never examined Plaintiff in person. (R. 24). And Dr. Orth appeared to admit that he did not even have enough information to fully opine on Plaintiff's impairments, noting that he "would have preferred [to see the] operating surgeon's evaluation." (R. 703). Dr. Orth's assessment that Plaintiff could sit for a total of five hours in a workday is the *least* restrictive medical opinion in the record, yet it still falls sort of the six hours generally required to meet the demands of sedentary work. *See Perez*, 77 F.3d at 46.

The ALJ also appears to have relied on the consultative examiner Dr. Perkins-Mwantuali to support certain physical aspects of the RFC. However, unlike Dr. Orth, Dr. Perkins-Mwantuali gave no opinion at all as to Plaintiff's ability to sit for any period of time. (*See* 300–304). Further, it is not clear how the ALJ accounted for Dr. Perkins-Mwantuali's findings that Plaintiff had "moderate limitation[s] to standing, walking, kneeling, and crawling," and "moderate to marked limitation with range of motion of cervical spine." (R. 303). Thus, the opinions of Drs. Orth and Perkins-Mwantuali do not amount to substantial evidence for an RFC that Plaintiff could sit for six hours in an eight-hour day.

In contrast to Dr. Orth and Dr. Perkins-Mwantuali's assessments, Dr. Gould stated in June 2015 that Plaintiff was limited to sitting for less than 2 hours in an 8-hour workday. (R.

15

323). This was the only medical opinion by an examining physician regarding Plaintiff's ability to sit for prolonged periods. Dr. Gould is also a pain management specialist, and he had a long-term treating relationship with Plaintiff from 2011 to 2016. Moreover, Dr. Gould's assessments are consistent with his treatment notes, as well as treatment notes from Plaintiff's primary care provider, Dr. Perlanski.[2] (*See generally* R. 325–477). Dr. Perlanski's treatment history with Plaintiff spanned from 2002 through 2015 and consistently reflects Plaintiff's ongoing treatment for chronic back and neck pain. (*See, e.g.*, R. 325, 365, 402, 410, 430, 461). Dr. Gould's assessment is also consistent with Plaintiff's history of surgery, serious pain medication, and testimony that she remains in constant neck and back pain. (R. 82).

But the ALJ did not give Dr. Gould's treating physician opinion controlling weight, instead giving the assessment only "little weight." The ALJ noted in conclusory fashion that Dr. Gould's opinion was "not supported by either the EMG test results or clinical findings in the record." (R. 24). The ALJ added that Dr. Gould's assessment was "challenged and contradicted by the assessments of the consultative examiner and the impartial medical expert," which the ALJ provided greater weight. (*Id.*). However, the ALJ did not address the frequency, length, and extent of Plaintiff's treatment with Dr. Gould, the consistency of his opinion with Dr. Perlanski's assessments, or the fact that Dr. Gould is a specialist. And the opinions of Drs. Orth and Perkins-Mwantuali did not actually support the sitting portion of the RFC so as to override Dr. Gould. (*See* R. 300–304, 697–706). Thus, the ALJ did not give good reasons for discounting the treating physician opinion of Dr. Gould, and the failure to do so is error. *See Estrella*, 925 F.3d at 95–96; *see also* 20 C.F.R. § 416.927(c)(2)(i).

---

[2] It appears that the ALJ did not consider any of Dr. Perlanski's assessments or treatment notes in determining the RFC. (*See generally* R. 18–26).

16

The question then is, based on the foregoing, whether to remand this case for additional administrative proceedings or for the calculation of benefits. When the record contains persuasive evidence of total disability and the correct application of the legal standards leads to the conclusion that the plaintiff is disabled and further proceedings would serve no purpose, remand for calculation of benefits is appropriate. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand."). If there are important gaps in record, however, further proceedings are necessary. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

The Court finds that remand for calculation of benefits is warranted in this case. The administrative record is complete, and additional development of the evidence is not required. Further, for the reasons discussed above, once proper weight is given to the opinion of Plaintiff's treating physician Dr. Gould, a finding of disability is inevitable. This opinion should have been given controlling weight based on the factors in 20 C.F.R. § 416.927(c)(2), particularly the length of Dr. Gould's treating relationship with Plaintiff, his expertise as a pain management specialist, and the consistency of his opinion with the findings of Plaintiff's long-time primary care physician, Dr. Perlanski. Indeed, the record shows that Plaintiff suffers from severe back and neck pain, for which she has undergone surgery, received steroid injections, and taken opioid pain medication. And, as discussed above, the rosier, less restrictive opinions of Drs. Orth and Perkins-Mwantuali do not support an RFC for sedentary work. Simply put, there is no substantial evidence in the record that Plaintiff is capable of gainful employment, and the Commissioner is not entitled to another chance to prove otherwise. Accordingly, the Court remands this case solely for calculation of benefits. *See Cordero v. Colvin*, 15-CV-00845, 2016 WL 6829646, at *5, 2016 U.S. Dist. LEXIS 161126, at *17–18 (W.D.N.Y. Nov.

21, 2016) (remanding for calculation of benefits where "the record is complete, and further administrative proceedings would serve no purpose"); *Barg v. Astrue*, 08-CV-1173, 2012 WL 11406531, at *14, 2012 U.S. Dist. LEXIS 190381, at *42–45 (N.D.N.Y. Mar. 21, 2012) (remanding for calculation of benefits where the treating physician's opinion supported finding of disability and there were no gaps in the administrative record).

IV. CONCLUSION

For the foregoing reasons it is

**ORDERED** that the decision of the Commissioner is **REVERSED,** and this matter is **REMANDED FOR THE CALCULATION OF BENEFITS**; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Date: September 27, 2019
Syracuse, New York

*/s/ Norman A. Mordue*
Norman A. Mordue
Senior U.S. District Judge